IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SILVANA LANDAU,<br><br>         Plaintiff,<br>    v.<br><br>D.O. CHRISTOPHER LUCASTI, et al.,<br><br>         Defendants. | HONORABLE JEROME B. SIMANDLE<br><br>Civil No. 06-1229 (JBS)<br><br>**MEMORANDUM OPINION** |

**SIMANDLE**, District Judge:

　　This matter is before the Court on three motions in limine filed by the parties in advance of a jury trial in this case. Defendants have moved to disqualify Plaintiff's proposed expert on liability and damages, Lamar Blount [Docket Item 74]. Plaintiff has moved to disqualify Defendants' proposed liability experts Dr. Alan Tice and Dr. Philip Paparone, or in the alternative to limit their testimony [Docket Item 82]. Plaintiff also asks the Court to preclude Defendants from referring to the fact that the United States elected not to intervene in this case and has not initiated a criminal prosecution against Defendants [Docket Item 80] and Defendants do not oppose this request.

　　For the reasons the Court will discuss below, the Court will deny as moot Defendants' motion to exclude Mr. Blount's testimony regarding the meaning of the governing Medicare regulations (but will narrow that testimony because the issues on which Mr. Blount was to testify were decided by this Court's summary judgment

decision) and deny Defendants' motion to exclude Mr. Blount's testimony regarding false claims and compensatory damages.  The Court will determine the admissibility of Mr. Blount's summary chart before trial.  The Court will further provide Plaintiff an opportunity to provide Mr. Blount's supplemental rebuttal opinion regarding industry practice for physicians billing Medicare "incident to" their services, but will not determine the admissibility of that testimony at this stage.

As to Plaintiff's motions, the Court grants Plaintiff's request to limit the testimony of Dr. Tice and Dr. Papparone, but declines to exclude their testimony entirely.  The Court will also grant Plaintiff's unopposed request to preclude reference to the government's decision not to intervene and not to initiate (so far) prosecution against Defendants.  The Court will not determine, at this stage, whether Defendants may tell the jury that their verdict could be tripled and the punitive damages could be added.

I.   **BACKGROUND**

This is a qui tam action under the False Claims Act ("FCA"), 31 U.S.C. § 3729, in which the United States has declined to intervene.  Plaintiff Silvana Landau has alleged that Dr. Christopher Lucasti and his practice, South Jersey Infectious Diseases, Inc. ("SJID"), knowingly presented false claims to the United States in which they sought payment from Medicare for

2

services "incident to" Dr. Lucasti's outpatient intravenous antibiotic therapy treatment, when Dr. Lucasti was not actually present in his office during the infusions.

Of the three prongs of the FCA,[1] only the scienter prong remains in dispute.  There is no dispute that Defendants presented claims for payment to the United States (through the Centers for Medicare and Medicaid Services ("CMS") and its predecessor Health Care Financing Administration ("HCFA")).  Further, the Court in its January 6, 2010 Opinion and Order determined that Medicare regulations 42 C.F.R. § 410.26(b)(5) and 410.32(b)(3)(ii) in effect on and after January 1, 2002[2] require a physician to be physically present in the office suite when billing Medicare for outpatient infusion therapy at the physician services rate, and "[t]o the extent a physician is not present as required, yet bills Medicare for a service incident to the services of a physician, that claim violates the Medicare requirement and is false." Landau v. Lucasti, --- F. Supp. 2d

---

[1] "To establish a prima facie case under the FCA, the relator must prove: '(1) the defendant presented or caused to be presented to an agent of the United States a claim for payment; (2) the claim was false or fraudulent; and (3) the defendant knew the claim was false or fraudulent.'" U.S. ex rel. Hefner v. Hackensack University Medical Center, 495 F.3d 103, 109 (3d Cir. 2007) (quoting Hutchins v. Wilentz, Goldman & Spitzer, 253 F.3d 176, 182 (3d Cir. 2001)).

[2] The Court granted summary judgment in favor of Defendants for claims to Medicare for infusion therapy rendered before January 1, 2002.

----, 2010 WL 93282, at *11 (D.N.J. 2009). Nevertheless, the Court denied Plaintiff' summary judgment on the issue of scienter, finding that expert testimony from Dr. Allan Tice that it was accepted practice within the field "not to abide by the plain meaning of Section 410.26" created a question for a jury because a reasonable fact-finder "could find that a reasonable and prudent doctor would be satisfied by the experts in his own field and was merely negligent in not taking further steps to learn that the plain language of the regulations did apply to his practice." Id. at *10.

## II. DEFENDANTS' MOTION TO DISQUALIFY PLAINTIFF'S EXPERT L. LAMAR BLOUNT AND STRIKE HIS EXPERT REPORTS

Mr. Blount and his wife, Carolyn Blount, make up Health Law Network, Inc., a business that provides expert healthcare witnesses, compliance, and litigation support. Mr. Blount has been a Certified Healthcare Financial Professional since 1997 and was a healthcare financial consultant and auditor from 1974 to 2002, when he began his litigation support practice. (Blount June 30, 2009 Report App. C.) Mr. Blount is also a Certified Public Accountant. (Id.) He has over thirty years experience with healthcare auditing and financial consulting, including Medicare reimbursement planning. (Blount Aff. ¶¶ 3-7; Blount June 30, 2009 Report App. C.) At Health Law Network, Mr. Blount focuses on Medicare and Medicaid compliance, False Claims Act cases, hospital and physician reimbursement, clinical

4

documentation, ICD (disease classifications) and CPT (procedural classifications) codes, and billing disputes.  (Blount Aff. ¶ 7.) Mr. Blount has lectured on Medicare compliance and published on the subject, including a chapter on "incident to" services and Medicare compliance (encompassing the direct supervision requirement) in Mastering the Reimbursement Process, published by the American Medical Association.  (Blount Aff. ¶¶ 9-13; Blount June 30, 2009 Report App. C.)

Plaintiff retained Health Law Network to answer the following questions: (1) Does Medicare require the presence of a physician during the administration of infusion therapy if the physician bills for the service? (2) Did Dr. Lucasti meet Medicare's requirements in billing for infusion therapy services? (3) If Dr. Lucasti did not meet Medicare's requirements for billing infusion therapy services, what is the amount improperly billed to and reimbursed by Medicare?[3]

The bulk of Defendants' motion to disqualify Mr. Blount and exclude his reports turns on his qualifications to render his opinion upon the meaning of the Medicare regulations governing "incident to" and their applicability to infusion therapy.  The Court need not determine whether Mr. Blount is qualified to

---

[3] Mr. Blount also discussed billing for hospital inpatient consultation services (Blount June 30, 2009 Report at 9-10), but at oral argument Plaintiff's counsel confirmed that Plaintiff has abandoned any such claims.

5

render his opinion upon this question, because that question has been decided as a matter of law and should not be presented to the jury.  The Court has found that the Medicare regulations on and after January 1, 2002 required Dr. Lucasti to be physically present in his office suite and available during infusion therapy provided incident to his services.  Because this question is not to be decided by the jury, Mr. Blount's testimony on the subject would not assist the jury under Rule 702, Fed. R. Evid.  Nevertheless, Mr. Blount may reference these regulations and their established meaning as a basis for his other opinions and calculations.

The Court does find, however, that Mr. Blount is qualified to testify as an expert on Medicare reimbursement and billing issues.  He possesses specialized knowledge, based on his over thirty years extensive experience as a healthcare auditor addressing Medicare reimbursement concerns and through his published works.  Thus, he is able to analyze the records in this case to determine, consistent with this Court's January 6th Opinion, whether and how often Dr. Lucasti submitted claims to Medicare under his provider number for infusion services performed while Dr. Lucasti was not physically present in the office suite and therefore submitted false claims.

Defendants argue that Mr. Blount's testimony and summary chart regarding the number of false claims submitted by Dr. Lucasti should be excluded because Mr. Blount's was too remotely

6

involved in the calculation process.  Mrs. Blount, with the help of others, entered the data drawn from Defendants' documents into a spreadsheet.  (Blount Dep. at 155-56.)  Another woman named Carolyn (not Mrs. Blount), took data provided by CMS in Excel format and, at Mr. Blount's instructions, created a program to calculate the number of claims made on the days that Dr. Lucasti appeared to be out of town (one claim might have multiple service codes).  (Id. at 72-76.)  Mr. Blount was not familiar with the woman's training, but knew she has "a high level of Excel expertise" and had used her before on large Excel files.  (Id. at 75-76.)  Mr. Blount's role in calculating the number of false claims appears to have been to direct the process and to work with his wife to identify days when Dr. Lucasti might have been out of town beyond those dates that defense counsel identified, (id. at 187-93).  Defendants also challenge some of the days identified days when Dr. Lucasti was out of town (on one such day Dr. Lucasti was only in Philadelphia).

     The Court finds that Mr. Blount's oversight of the process, his past experience with Carolyn's Excel expertise, and his working relationship with Mrs. Blount (also an employee at Health Law Network), give him sufficient personal knowledge to speak to the reliability of the calculations.  Likewise, the methodology for reviewing the voluminous billing information and comparing it to the dates when Dr. Lucasti was known to be out of the office is sufficiently reliable; a method of analysis need not lead to a

7

perfect or unassailable result to be an acceptable basis for an expert opinion, but the methods used by Mr. Blount and the assumptions underlying his methodology are sufficiently well-grounded in the field of Medicare claims analysis to lead to an admissible opinion.

The Court will not, however, determine the admissibility of the summary chart under Rule 1006, Fed. R. Evid., on this record. Neither party has offered evidence regarding the accuracy of the chart nor the admissibility of the underlying information. Eichorn v. AT&T Corp., 484 F.3d 644, 650 (3d Cir. 2007) ("Courts have cautioned that Rule 1006 is 'not a back-door vehicle for the introduction of evidence which is otherwise inadmissible,' and that the voluminous evidence that is the subject of the summary must be independently admissible.") (quoting Peat, Inc. v. Vanguard Research, Inc., 378 F.3d 1154, 1160 (11th Cir. 2004)); see SEC v. Hughes Capital Corp., 124 F.3d 449, 456 (3d Cir. 1997) (district court did not abuse its discretion when it excluded summary of underlying business records that the court found "lack[ed] trustworthiness" making them inadmissible under Rule 803(6), Fed. R. Evid.). Such questions must be addressed at a pretrial hearing pursuant to Rule 104, Fed. R. Evid.

Finally, Plaintiff seeks to offer rebuttal testimony from Mr. Blount regarding industry practice among physicians billing Medicare for "incident to" services, to be used in response to Dr. Tice's testimony regarding industry practice (to be discussed

below).  The Court lacks sufficient information regarding the opinion to be offered, including the basis for this opinion, to determine its admissibility.  As a result, in light of its rebuttal nature and the Court's decision (<u>infra</u>) to allow Dr. Tice to testify on this topic, the Court will give Plaintiff an opportunity to supplement Mr. Blount's opinion and Defendants will have an opportunity to respond.  The Court will determine the admissibility of this rebuttal testimony before trial.

### III. PLAINTIFF'S MOTION TO DISQUALIFY DEFENDANTS' DR. ALAN TICE AND DR. PHILIP PAPARONE, OR, IN THE ALTERNATIVE, TO LIMIT THEIR TESTIMONY

Plaintiff argues that the testimony of Dr. Tice and Dr. Paparone should be entirely excluded, because they are not experts in "the field of Medicare billing and reimbursement issues," their opinions regarding the appropriateness of the Medicare regulations are irrelevant, and their testimony regarding industry practice "contradicts" this Court's opinion regarding the meaning of the Medicare regulations as applied to outpatient infusion therapy.  Plaintiff also argues that the doctors' testimony regarding industry practice is irrelevant because neither professed to know about Defendants' actual practices or Dr. Lucasti's actual understanding of the Medicare requirements.  Defendants respond that both doctors are qualified to discuss the industry practice regarding treatment of Medicare outpatient infusion patients and that such testimony does not

contradict this Court's opinion, because the Court has acknowledged that industry Medicare billing practice is relevant on the question of scienter.  The Court will, for the reasons discussed below, permit the doctors to testify regarding outpatient infusion therapy Medicare billing practices, but preclude any testimony regarding the actual Medicare requirements (already decided by this Court) and the merits or wisdom of those requirements (as irrelevant).

   Plaintiff does not challenge the expertise of Dr. Tice and Dr. Paparone regarding the practices within the outpatient infusion therapy field as applied to Medicare patients.  Instead, she challenges their qualifications to analyze regulatory requirements.  The Court agrees that neither doctor should be permitted to offer opinions on what the Medicare regulations actually require, because that question has been decided by this Court as a matter of law; the Court has also determined that a Medicare claim submitted for infusion therapy services rendered after January 1, 2002, incident to Dr. Lucasti's services, is "false" if Dr. Lucasti was not present in his office suite and available when the services were rendered by his staff. Similarly, neither doctor should be permitted to discuss the appropriateness of the Medicare regulations as applied to outpatient infusion therapy, as such testimony does not address any element of a FCA claim (claim, falsity, or scienter) and so would be irrelevant (and likely misleading to a jury).

10

Nevertheless, the testimony of both Dr. Tice and Dr. Paparone regarding industry practice for physicians billing for Medicare outpatient infusion patients as "incident to" their own services is relevant to the question of scienter. As this Court has already held:

> Summary judgment is not appropriate on the issue of Dr. Lucasti's scienter as it relates to his Medicare claims. The Court "must heed the basic rule that a defendant's state of mind typically should not be decided on summary judgment." U.S. Ex. Rel. Cantekin v. Univ. of Pittsburgh, 192 F.3d 402, 411 (3d Cir. 1999). Defendants have submitted the expert testimony of Dr. Tice, who both challenged the plain-meaning interpretation of the current regulations and stated that the standard practice in the infusion therapy field was not to abide by the plain meaning of Section 410.26, but instead considered it sufficient for the doctor to be immediately available. A fact-finder could find that Plaintiff's warnings, and even Section 410.26 (which does not, as Defendants point out, expressly reference infusion treatment or include the detailed definition of "direct supervision," instead referring to Section 410.32, which also makes no reference to infusion treatment), were not obvious warning signs in the face of an apparently industry-wide contrary practice . . . A jury could find that a reasonable and prudent doctor would be satisfied by the experts in his own field and was merely negligent in not taking further steps to learn that the plain language of the regulations did apply to his practice. Consequently, while there is evidence to support a finding that Dr. Lucasti and SJID were reckless in their billing practices, there is also evidence which supports a finding that they were merely negligent.

Landau, 2010 WL 93282, at *10. It does not matter that neither Dr. Tice nor Dr. Paparone can speak to Dr. Lucasti's actual scienter. Their testimony is evidence that is relevant to Dr.

11

Lucasti's scienter,[4] and though Dr. Lucasti's own testimony might also be necessary to tie the doctors' testimony to the facts of this case, it remains conditionally relevant, as discussed above. Nor does such testimony contradict the Court's understanding of the Medicare requirements -- it is possible (and has been alleged) that the alleged industry practice for outpatient infusion therapy actually does violate the Medicare requirements.[5]  The opinions of these experts concerning the industry-wide practice of physicians billing Medicare for outpatient infusion therapy "incident to" the physician's services may be relevant to Dr. Lucasti's state of mind in submitting such claims to Medicare.  This testimony is relevant to the remaining jury question (Dr. Lucasti's scienter in submitting Medicare claims for his services when he was not present in his office), is essential to Defendants' defense, and does not unduly prejudice Plaintiff, and so it should be admitted.

---

[4] Dr. Paparone's testimony is not merely cumulative, because it speaks to the industry standard in Dr. Lucasti's region.

[5] The Court does not determine in this motion whether it is the common practice for physicians who are not present in the office suite to nonetheless bill Medicare for services "incident to" their own physician services, in contrast to, for example, billing these as services rendered by a certified Medicare provider such as a physician's assistant at a lower rate of compensation.  Indeed, Plaintiff is free to challenge such an opinion through cross-examination based upon the expert's own practices or writings.

## IV. PLAINTIFF'S UNOPPOSED MOTION TO PRECLUDE DEFENDANTS FROM REFERRING TO THE FACT THAT THE UNITED STATES ELECTED NOT TO INTERVENE IN THIS CASE AND HAS NOT YET INITIATED A CRIMINAL PROSECUTION

Defendants do not oppose this motion, and because the Court agrees that the government's decision not to intervene and not to prosecute does not speak to the merits of Plaintiff's claims,[6] the Court will preclude such references.  The Court will not address Plaintiff's argument, raised for the first time at oral argument, that Defendants may not tell the jury about the potential for treble damages and punitive damages.  The Court will make that determination, if adequately raised, before or at trial.

## V. CONCLUSION

For the foregoing reasons, the Court will permit Mr. Blount to testify regarding false claims and compensatory damages, and will give Plaintiff's the opportunity to seek to supplement his proposed rebuttal testimony.  The Court will determine the admissibility of any rebuttal testimony as well as Mr. Blount's summary chart before trial.  The Court will limit the testimony of Dr. Tice and Dr. Paparone to questions of industry practice for physicians billing Medicare for treatment of outpatient infusion therapy patients incident to their own services, and

---

[6] As Plaintiff points out, in its letter declining to intervene, the government expressly stated: "Our decision to decline should not be construed as a statement about the merits of the case.  Indeed, the United States retains the right to intervene at a later date upon a showing of good cause.  31 U.S.C. § 3730(c)(3)."

exclude testimony regarding the meaning of the Medicare requirements or the wisdom of those requirements.  Finally, the Court will preclude Defendants from referencing the government's decision not to intervene and not to initiate prosecution.  The accompanying Order shall be entered.


**February 8, 2010**             **s/ Jerome B. Simandle**
Date                               Jerome B. Simandle
                                        U.S. District Judge